UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALPHA TECH PET, INC., <br><br> Plaintiff, <br><br> v. <br><br> LAGASSE, LLC; ESSENDANT MANAGEMENT SERVICES LLC; ESSENDANT CO.; UNITED STATIONERS INC.; and JOHN DOES 1-10, <br><br> Defendants. | No. 16 C 513 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Alpha Tech Pet, Inc., alleges that Lagasse LLC, Essendant Management Services LLC, Essendant Co., United Stationers, Inc., and John Does 1-10 ("Defendants") sent Alpha Tech eight unsolicited facsimile advertisements in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Protection Act of 2005, 47 U.S.C. § 227. R. 1. In addition to its individual claims, Alpha Tech also brings this action on behalf of all others similarly situated, and moves to have the Court certify a class of plaintiffs pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (g). R. 3.[1] Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and alternatively, to strike the class allegations pursuant to

---

[1] As this motion was filed to protect the class for the reasons described in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011), the Court has not ordered a briefing schedule on this motion.

Federal Rule of Civil Procedure 12(f). R. 19. Defendants also oppose Alpha Tech's motion for class certification and ask the Court to deny that motion. *Id.* For the following reasons, Defendants' motion to dismiss is denied, Defendants' motion to strike class allegations is denied, and Alpha Tech's motion for class certification is entered and continued to a more appropriate point in the case.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In

applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

Alpha Tech alleges that Defendants sent eight unsolicited faxes to Alpha Tech between January 12, 2012 and April 26, 2012, R. 1 ¶¶ 13-15, copies of which it attached to its complaint. R. 1-1. The following is a list of the faxes by date, with a short description of the content of each fax:

> January 16, 2012: offers a "5% rebate on Rubbermaid Commercial Products," R. 1-1 at 2;
>
> January 19, 2012: offers a "5% rebate on Purchases of Open Diversey Products," *id.* at 3;
>
> February 15, 2012: provides a "price change notification" for certain products, states "Electronic Pricing Tools Available to You 24/7!" and explains how customers can get up-to-date prices on the Legasse website, *id.* at 4;
>
> March 15, 2012: provides "price change notification" for certain products, states "Electronic Pricing Tools Available to You 24/7!" and explains how customers can get up-to-date prices on the Legasse website, *id.* at 5;
>
> March 20, 2012: encourages the recipient to "Place Your Order Today!" for a "Hot Paper Item, Quality hand drying towels for use in commercial restroom dispensers," *id.* at 6;
>
> Illegible Date: encourages the recipient to "Place Your Order Today!" for a "New Paper Item, Brighter and whiter toilet tissue that is softer and more absorbent to provide at-home quality," *id.* at 7;
>
> April 25, 2012: informs the "Valued Customer" that the "Customer Care Team is currently experiencing difficulties with our email system," and encourages

3

customers to "continue to place orders via" phone or internet, *id.* at 8;

April 26, 2012: informs the "Valued Lagasse Customer" that "service has been successfully restored to the Lagasse Email system," *id.* at 9.

All eight of the faxes include the LagasseSweet logo. R. 1-1 at 2-9. All eight of the faxes state, "If you have received this fax in error, please accept our apologies and call toll free 877.385.4440 to be removed from our list." *Id.*

Alpha Tech alleges that Defendants sent the faxes without the statutorily mandated "opt-out" message. R. 1 ¶¶ 18, 29. Alpha Tech also alleges that the faxes caused Alpha Tech to lose paper and toner in printing the faxes, and cost Alpha Tech employee time, as the employees reviewed and routed the faxes. *Id.* ¶ 36. Alpha Tech alleges that it "had not invited or given permission to Defendants to send the faxes." *Id.* ¶ 15.

Alpha Tech also seeks certification the following class of individuals:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, and (3) which Defendants did not have prior express permission or invitation, or (4) which did not display a proper opt-out notice.

R. 3 at 1.

## Analysis

### I. Motion to Dismiss

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited

4

advertisement." 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(5). Federal regulations provide that the "term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

Defendants argue that Alpha Tech has failed to state a clam with respect to four of the eight faxes because they do not constitute advertisements.[2] Specifically, Defendants contend that the March 15, February 15, April 25, and April 26 faxes are "purely informational messages that inform recipients regarding price increases of the functionality of the email system at Lagasse," and thus fall outside of the scope of the TCPA. R. 20 at 2.

Here, all four faxes Defendants contest are plausibly advertisements. The March 15 and February 15 faxes provide the prices for certain goods and encourage customers to investigate the availability of further products on Defendants' website. These faxes can plausibly be characterized as "advertising the commercial availability or quality of . . . goods." 47 U.S.C. § 227(a)(5).

---

[2] Defendants also argue that "Plaintiff's Complaint should be dismissed to the extent that it seeks relief under the TCPA for those faxes in which Defendants had prior express permission," because "the FCC has granted Defendants a retroactive waiver excusing Defendants from the opt-out notice requirements for those faxes in which Defendants had prior express permission." R. 20 at 9. But Alpha Tech alleges that it did not give permission to Defendants to send any of the faxes. Thus, whether the waiver can serve as an affirmative defense is an issue that will not be ripe unless and until the evidence shows that Defendants actually obtained prior express permission from Alpha Tech or any members of the putative class.

5

The April 25 and 26 faxes do not mention specific goods, but encourage "customers" to place orders online or by phone while Defendants' email system was not working. Simply by being addressed to "customers" the faxes can be plausibly characterized as advertisements for goods, because a customer is "someone who buys goods." *See* Merriam-Webster Dictionary online (www.merriam-webster.com) (visited on Sept. 7, 2016). Additionally, although the faxes state that their purpose was to inform the recipients regarding the functionality of Defendants' email system, the purpose of providing that information was to enable the "customers" who received the faxes to purchase goods from Defendants. *See N.B. Indus. v. Wells Fargo & Co.*, 2010 WL 4939970, at *6 (N.D. Cal. Nov. 30, 2010) (courts should look past "pretext" in determining whether a fax is an advertisement covered by the TPCA). This is apparent because the faxes also provide information about alternative means of purchasing goods, i.e., on the internet or by phone. Such an "invitation" to do business is plausibly an advertisement. *See Brodsky v. HumanaDental Ins. Co.*, 2014 WL 2780089, at *7 (N.D. Ill. June 12, 2014); *Mussat v. Power Liens, LLC*, 2014 WL 3610991, at *2 (N.D. Ill. July 21, 2014) (an "invitation" or "offer to make use of" services is plausibly an advertisement). Thus, both the April 25 and 26 faxes are plausibly advertisements.

Defendants cite an FCC ruling to point out that "FCC rules emphasize a distinction between advertising faxes versus informational faxes, noting that 'messages that do not promote a commercial product or service . . . are not unsolicited advertisements under the TCPA.'" R. 20 at 6 (quoting *In re Matter of*

*Rules & Reg's Implementing the TCPA of 1991*, 21 FCC Rcd. 3787, 3810 (Apr. 6, 2006)). On the basis of this FCC ruling, Defendants argue that the four faxes at issue are "informational" in that they inform the recipient about Defendants' prices and the functionality of Defendants' email system. R. 20 at 8. Defendants contend that to the extent the faxes contain advertising, it is "'incidental'" and "'does not convert the entire communication into an advertisement'" for purposes of the TCPA. *Id.* at 7 (quoting 21 FCC Rcd. at 3814).

As an initial matter, the FCC ruling Defendants rely on "discusses the meaning of 'informational communication,' a phrase that does not appear in [the statute or the federal regulations]," but is the "explanation the [FCC] gave when adopting the regulation." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 687-88 (7th Cir. 2013). The Seventh Circuit has held that this is "a species of untethered legislative history," and "although legislative history may assist in understanding an ambiguous text, a freestanding declaration untied to an adopted text must be ignored." *Id.* at 688. For this reason, the Seventh Circuit did not use the FCC's interpretation of the statute and regulation in analyzing whether a fax was an "advertisement," but simply applied the statutory and regulatory definition of "commercial availability." *Id.* at 687. As discussed, that definition plausibly encompasses the faxes at issue here.

Even if the Court was bound to follow the FCC's ruling,[3] the Court's decision would be unchanged because Defendants' arguments apply the FCC's ruling too broadly. The FCC ruled:

> facsimile communications that contain only information, such an industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules. An incidental advertisement contained in a newsletter does not convert the entire communication into an advertisement. . . .
> In determining whether the advertisement is to a bona fide "informational communication," the Commission will consider whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, i.e., to paid subscribers or to recipients who have initiated

---

[3] Defendants cite *Grind Lap Services, Inc. v. UBM LLC*, to argue that the Court is bound to follow the FCC ruling despite the Seventh Circuit's holding in *Turza*. 2015 WL 6955484 (N.D. Ill. Nov. 10, 2015) ("The Hobbs Act 'reserves to the courts of appeals the power to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final FCC orders. As such, the court cannot, as plaintiff suggests, 'adopt the reasoning of' *Turza* and find that the Commission's rule relating to transactional communications is not valid.'" (quoting *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010))). But in *Turza* the Seventh Circuit decided the validity of the FCC ruling at issue here. Contrary to Defendants' argument, this Court is not determining the validity of an FCC ruling by finding that the FCC ruling is not binding, but is merely following the Seventh Circuit's decision that the particular FCC ruling at issue here is not binding with respect to interpreting the statutory and regulatory language relevant to this case. The other district court decisions Defendants cite to support their argument that the FCC ruling is binding on this Court did not cite or analyze *Turza*, so the Court finds them unpersuasive on this question. *See P&S Printing LLC v. Tubelite, Inc.*, 2015 WL 4425793, at *1 (D. Conn. July 17, 2015); *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 2015 WL 2330197, at *1 (N.D. Ill. May 14, 2015); *N. Suburban Chiropractic Clinic, Ltd. v. Merck & Co.*, 2013 WL 5170754, at *1 (N.D. Ill. Sept. 13, 2013).

> membership in the organization that sent the communication.

21 FCC Rcd. at 3814 and n.187. Based on Alpha Tech's allegations and what the Court can glean from the face of the four faxes at issue, the faxes do not fit the definition of "informational communication" the FCC exempts from the scope of the TCPA. The faxes are not alleged to be "industry news articles, legislative updates, or employee benefit information." Neither are they alleged to be "issued on a regular schedule" or "directed to . . . paid subscribers or to recipients who have initiated membership in the organization that sent the communication." Rather, the faxes at issue are alleged, and appear, to be random communications sent with the intent to encourage "customers" to purchase goods from Defendants.

Furthermore, Defendants' reliance on the FCC's exemption of "incidental advertising" is misplaced. The FCC ruling refers to an "incidental advertisement contained in a newsletter." Nothing about Alpha Tech's allegations or the face of the faxes in question would allow the Court to plausibly characterize the faxes as "newsletters." Thus, the FCC ruling, even if it was binding on this Court, does not help Defendants at this stage of the proceedings.

Defendants also cite the FCC ruling to argue that the February 15 and March 15 faxes are "price lists [which are] transactional faxes that are not actionable under the TCPA." R. 20 at 8. The FCC ruling, however, applies not to price lists generally, but to a "price list sent from a wholesaler to a distributor . . . for the purpose of communicating the terms on which a transaction has already occurred." 21 FCC Rcd. at 3813. By contrast, "messages that advertise the

commercial availability . . . of goods or services, but purport to be 'price sheets' . . . in order to evade TCPA rules, are nevertheless unsolicited advertisements, if not sent for the purpose of facilitating, completing, or confirming an ongoing transaction." *Id.* and n.180. Neither Alpha Tech's allegations nor the facial content of the February 15 and March 15 faxes make it plausible that the faxes meet the FCC's standards for the price list exemption.[4]

Moreover, the elements of the FCC's description of an "informational communication" call for a fact intensive examination of the circumstances in which a particular fax is sent, and such a determination is not appropriate at this stage of the proceedings. It might be that Defendants send faxes like these on a regular basis, but there is nothing in the record to suggest that. It might be that Alpha Tech has some preexisting relationship with Defendants that would authorize Defendants to send these faxes, but that too is not reflected in the current record. To the extent the FCC ruling is authoritative (which the Seventh Circuit has held it is not) and might save the faxes at issue on this motion (which does not appear to be the case from the Court's preliminary review of the faxes' content), this cannot be determined without discovery into the kind of circumstances described by the FCC's ruling.[5]

---

[4] Defendants cite *N.B. Industries v. Wells Fargo & Co.*, 2010 WL 4939970, at *6 (N.D. Cal. Nov. 30, 2010), to support their contention that "price lists are transactional faxes that are not actionable under the TCPA." R. 20 at 8. But the fax at issue in *N.B. Industries* was not a price list, so it is not persuasive on this point.

[5] Defendants' reliance on *P&S Printing LLC v. Tubelite, Inc.*, 2015 WL 4425793 (D. Conn. July 17, 2015), is misplaced. In *Tubelite*, the court held that a fax informing

## II. Class Allegations

Defendants also have moved to strike Alpha Tech's class allegations, because (1) the "proposed class is unascertainable and impermissibly 'fail-safe,'" R. 20 at 10, and (2) "individualized issues preclude the finding of commonality and predominance." *Id.* at 12. "Courts in this district have held that a motion to strike class allegations . . . can be an appropriate device to determine whether a case will proceed as a class action." *Bohn v. Boiron, Inc.*, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013) (quoting *Valentine v. WideOpen W. Fin.*, 288 F.R.D. 407, 414 (N.D. Ill 2012)). Although Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," "[c]ourts in this [d]istrict . . . evaluate motions to strike class allegations under Rule 23, not Rule 12(f)." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 294 (N.D. Ill. Mar. 17, 2014) (citing cases).

---

customers of the defendant's holiday schedule was not plausibly an advertisement despite the fact that the fax stated that "Tubelite continues its commitment to provide you with the best service possible" and thanked the recipient for their "continued support and help in allowing [Tubelite] to provide [them] with this exceptional service." The Court fundamentally disagrees with *Tubelite's* characterization of these phrases contained in the fax. Additionally, the court in *Tubelite* relied extensively on the FCC's ruling, which the Seventh Circuit has cautioned against. Moreover, in applying the standards from FCC's ruling, the court in *Tubelite* made factual findings about the fax in question which appear to have gone beyond the plaintiff's allegations. For these reasons, the Court finds *Tubelite* unpersuasive.

Defendants also rely on other cases in which there was no dispute that the fax was sent to "existing customers" or "subscribers." R. 27 at 5 (citing *Grind Lap Servs., Inc. v. UBM LLC*, 2015 WL 6955484, at *1 (N.D. Ill. Nov. 10, 2015); *Physicians HealthSource, Inc. v. MultiPlan Servs., Corp.*, 2013 WL 5299134, at *1-2 (D. Mass. Sept. 18 2013)). Those cases are inapposite because Alpha Tech makes allegations to the contrary.

### A. Ascertainability

Defendants contend that Alpha Tech's class definition is not "ascertainable" because it is a "fail-safe" class. Application of "Rule 23 requires that a class be defined . . . clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015); *see* Fed. R. Civ. P. 23(c)(3)(B) ("[T]he judgment in a class action must for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed . . . and whom the court finds to be class members."). This requirement is known as "ascertainability." *Mullins*, 795 F.3d at 659. One of the "common problems that have caused plaintiffs to flunk this requirement" is "classes that are defined in terms of success on the merits—so-called 'fail-safe classes.'" *Id.* at 659-60. "Defining the class in terms of success on the merits is a problem because 'a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* at 660 (quoting *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012)). "This raises an obvious fairness problem for the defendant: the defendant is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation." *Mullins*, 795 F.3d at 660 (7th Cir. 2015) (citing Erin L. Geller, Note, *The Fail–Safe Class as an Independent Bar to Class Certification,* 81 Fordham L. Rev. 2769 (2013)).

In cases alleging statutory injuries, like the injury alleged in this case under the TCPA, it can be tempting for a plaintiff to define its class in terms of the statutory elements that establish liability. Many statutory injuries are only

12

actionable because a legislature deemed them to be so. Since the statute defines the injury, it is understandable that a plaintiff would define a class in the statutory terms that define liability. But this focus on the terms of liability frequently results in class definitions that are fail-safe.

By contrast, for example, tort actions concern injuries to persons or property that are considered harmful regardless of a legislature's intent. No legislature needed to pass a law for the consumer of a defective product to collect damages. Since the injury exists apart from a statute, the legal elements that determine liability are independent of the injury for which the plaintiff seeks relief. This clearer separation of the particular circumstances of the plaintiff's injury and the elements that establish liability makes it easier for the plaintiff in a tort action to define a class properly in terms of the circumstances of the injury as opposed to improperly defining the class in terms of liability. For instance, a plaintiff in a products liability case is unlikely to define the class as those who purchased a "defective product" from the defendant manufacturer. This definition of course is fail-safe because it is couched in terms of liability—it is the "defective" nature of a product that determines liability. Rather, because a plaintiff in a products liability case is focused on the particular product (or part of a product) that caused the injury at issue, the plaintiff is much more likely to define the class as those who purchased "Product X" or any product containing "Part Y." These definitions leave open the question of liability and avoid the fail-safe trap.

Here, Alpha Tech alleges a class defined as those who received fax advertisements from Defendants (1) for which Defendants did not secure "prior express permission" to send, or (2) in which Defendants failed to "display a proper opt-out notice." With its references to "prior express permission" and "opt-out notice," this class definition uses the terms that define the scope of liability under the TCPA. The TCPA only prohibits faxed advertisements that are "unsolicited," and the TCPA defines an "unsolicited advertisement" as one sent without "prior express invitation or permission." 47 U.S.C. § 227(a)(5). Nevertheless, even a fax sent with permission must include a statutorily described "opt-out notice" to comply with federal regulations. 47 C.F.R. § 64.1200(a)(4)(iv); *see also Nack v. Walburg*, 715 F.3d 680, 684 (8th Cir. 2013), *cert denied* 134 S.Ct. 1539 (Mar. 24, 2014); *Brodsky*, 2014 WL 4813147, at *4. Further, the TCPA also exempts from its prohibition on "unsolicited advertisements" a fax sent to a recipient with whom the sender has an "established business relationship" as long as the fax includes the statutorily described "opt-out notice."

Alpha Tech's claims center on whether Defendants included a proper opt-out notice on their faxes. Largely because the TCPA requires that faxed advertisements include an opt-out notice regardless of whether the sender received "prior express permission" from, or had an "established business relationship" with, the recipient, Alpha Tech concedes that "prior express permission" is irrelevant to its claims. *See* R. 26 at 15 ("The Court will not be required to delve into issues of prior express permission or EBR in this case because the class covers faxes lacking compliant opt-

out notice."). Since "prior express permission" is irrelevant to Alpha Tech's claims, it should not be an element of the class definition, and the Court strikes that portion of the definition. With "prior express permission" stricken, the only remaining issue with respect to the ascertainability of Alpha Tech's class definition, is whether Alpha Tech's inclusion of Defendants' failure to "display a proper opt-out notice" as an element of the definition makes it a fail-safe class.

Presumably, Alpha Tech included the failure to "display a proper opt-out notice" as an element in its class definition, because it would like its class to include anyone who received a fax from Defendants without a proper opt-out notice. But whether Defendants included a proper opt-out notice on their faxes is the primary question the answer to which will determine Defendants' liability in this case.[6] If the Court determines that Defendants failed to include proper opt-out notices in their faxes, Defendants will be liable to the recipients of those faxes. But if the Court determines that Defendants' faxes included proper opt-out notices, none of the recipients of those faxes will be included in the class. That is the danger of a fail-safe class, and it is present here under Alpha Tech's current class definition.

Analogy to the hypothetical products liability class described earlier will help elucidate the Court's reasoning. The products liability plaintiff avoids a fail-safe class definition by focusing on the particular factual circumstances that caused the injury at issue. A proper products liability class is not defined as anyone who

---

[6] Defendants raise the possibility of a FCC waiver as an affirmative defense, but as discussed, the relevance of that waiver will only be determined with discovery, and if that waiver does become relevant the class can be reassessed or redefined as necessary at that point in the litigation.

15

purchased a general "defective product," but those who purchased "Product X," or a product with "Part Y," in particular. By analogy in this case the proper class is not those who received a fax lacking a proper opt-out notice, but those who received the particular faxes Alpha Tech received, or any faxes that contained the purported opt-out language that Defendants included on the faxes Alpha Tech received, and which Alpha Tech alleges is insufficient under the terms of the TCPA. Thus, the Court redefines the class definition as follows:

> All persons who (1) on or after four years prior to the filing of this action (2) were sent any of the telephone facsimile messages attached to this complaint, or (3) were sent a telephone facsimile message that included the message, "If you have received this fax in error, please accept our apologies and call toll free 877-385-4440 to be removed from our list."

This definition avoids the problem of a fail-safe class because it is grounded in the particular factual circumstances that allegedly led to Alpha Tech's injury. Discovery might reveal a basis to further refine this definition or to dismiss the class allegations altogether. But the definition the Court has crafted will suffice for the time being.[7] The Court also grants Alpha Tech leave to amend the Court's class

---

[7] Defendants contend that this flaw in the class definition requires it to be stricken and Alpha Tech's motion for class definition to be denied. But this problem "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825; *see also Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) ("I am not yet persuaded that the No-Consent Class qualifies as a fail-safe class. It is not clear to me that this class definition creates a situation where membership in the class is dependent upon the validity of a putative member's claim. More importantly, it is not a basis on which to strike Plaintiff's class allegations prior to the certification stage."); *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014) ("Assuming that the Court finds his proposed classes to be fail-safe, the

definition—in accordance with the Court's reasoning about fail-safe classes—should Alpha Tech believe that the Court's definition misses some aspect of Alpha Tech's claims.

B. **Commonality and Predominance**

Defendants also argue that Alpha Tech's class allegations should be stricken because "courts have repeatedly found that the individualized issues of prior express invitation or permission to receive fax advertisements demonstrates the absence of commonality and predominance." R. 20 at 13. But as discussed, it may not be necessary to examine whether Alpha Tech or any members of the class gave permission to Defendants to send them faxes. And even if permission does become an issue with respect to an affirmative defense, permission is not always an individualized issue. *See, e.g., Wolfkiel*, 303 F.R.D. at 294 ("Courts have held . . . that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single 'leads' list compiled by a third party."); *see also Green v. Serv. Master On Location Servs.*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009); *Hinman v. M&M Rental Ctr.*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008); *Gene & Gene*, 541 F.3d 318 (5th Cir. 2008). Therefore, Defendants motion to strike Alpha Tech's class allegations for failure to allege commonality and predominance is denied.

Plaintiff argues that the Court should permit him to amend his class definitions rather than striking them entirely. The Court agrees."); *St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, 2013 WL 1076540, at *6 n.7 (E.D. Mo. Mar. 13, 2013) ("Moreover, in the face of a 'fail-safe class,' district courts have broad discretion to redefine the class in order to avoid issues that such a class definition may present.").

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss and strike, R. 19, is denied. The class definition is redefined in accordance with this order. The Court also rejects Defendants' argument that Alpha Tech's motion for class certification should be denied as premature. Despite the Seventh Circuit's decision in *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015), which overruled the reasoning in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011), requiring placeholder motions for class certification, the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez* has revived the potential need for place holder motions in this circuit. 136 S. Ct. 663, 672 (2016) ("We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount."). Alpha Tech's motion for class certification is entered and continued until a more appropriate point in the proceedings.

ENTERED:

_Thomas M. Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: September 7, 2016